# United States Bankruptcy Court
# Southern District Of Florida
# Ft. Lauderdale Division

Case No.: 15-19474- RBR
Chapter: 13

In re:

Edwin Loubriel

Debtor:



## MOTION FOR VERIFIED WRITTEN DEMAND OF TAXABLE CONTRACTS AND REQUEST FOR TAX RECORDS AND EVIDENTIARY HEARING

COMES NOW Edwin Loubriel (hereinafter "Loubriel") Pro Se hereby files this Notice of Filing. Motion for Verified Written Demand of Taxable Contracts and Request for Tax Records and Evidentiary Hearing.

### MATERIAL FACTS IN DISPUTE

1. The Movant in this case Aurora Loan Services LLC. has failed to demonstrate standing. Movant is not in Privity of Contract with Debtor and has not sustained any damage that can be traced to the debtor. This court has no jurisdiction to grant relief to a party that does not meet the burden to show it has prudential and constitutional standing to bring this claim.

2. "Standing is a requirement grounded in Article III of the United states Constitution, and a defect in standing cannot be waived by the parties." Chapman v. Pier 1 Imports (US.) Inc., 631 F.3d 939,954 (9th Cir. 2011).

3. To have standing Movant must prove standing with a recorded mortgage showing it to be the named payee and must prove damages by appearance of a competent fact witness

where the moving party cannot prove the existence of the Debt Instrument naming it as Debtors Creditor., then there is no debt.

4. Debtors Motion for Verified Written Demand for Taxable Contracts and Request for Tax Records will show under Federal Rule of Civil Procedure Movant lacks standing and Courts Jurisdiction over this matter.

5. Debtor has submitted a Property of Securitization Analysis Report Exhibit A. Supported with an Affidavit of Facts. As referred to in Verified Written demand for Taxable Contracts and Request for Tax Records.

6. This will demonstrate and prove Movants lack of standing to bring any action.

Debtor requests an evidentiary hearing and a ruling on the merits based on admissible competent evidence.

Edwin Loubriel
1272  NW 89th Terrace
Pembroke Pines, Florida 33024
PH · 954-295-3885

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that copies of the foregoing

MOTION FOR VERIFIED WRITTEN DEMAND OF TAXABLE CONTRACTS
AND REQUEST FOR TAX RECORDS AND EVIDENTIARY HEARING.

Have been furnished either by electronic or U.S. Mail to all parties listed on this 13th Day
of October 2015.

Cynthia M. Talton
McCalla Raymer
225 E. Robinson Street Suite 660
Orlando, Fl. 32801

Robin R. Weiner
Chapter 13 Trustee
P.O. Box 55907
Ft. Lauderdale, Fl. 33355

October 13, 2015

*From:*  Edwin Loubriel
1272 NW 89th Terrace
Pembroke Pines, Florida [33024]

*Sent by USPS Certified Mail*

*To:*  *J.P. Morgan Chase Bank*
Dept. Institutional Trust Services/Global
Debt  SASCO 2003-40A
4 New York  Plaza  6th Floor
New York, N.Y. 10004

*To:*  *Aurora Loan Services LLC.*
*7807 E. Peakville Ave. Suite 410*
Centennial, Co. 80111

*To:*  *Cynthia M. Talton*
McCalla Raymer LLC.
225 E. Robinson St, Suite 660
Orlando, Fl. 32801

*To:*  Lehman Brothers Bank FSB
c/o John Suckow, Alvarez & Marshall
600 Madison Ave. 8th Floor
New York, N.Y. 10022

*To:*  NationStar Mortgage
350 Highland Drive
Lewisville, TX. 75067

**To:**  Choice Legal P.A.
1800 N.W. 49th St., Suite 120
Ft. Lauderdale,  Fl. 33309

## CONSTRUCTIVE NOTICE

**CONSTRUCTIVE NOTICE CONCERNING PHANTOM FIDUCIARY RELATIONSHIP WITH Aurora Loan
Services LLC. AND ATTORNEY Cynthia M. Talton and Choice Legal P.A. REQUESTING SIGNED
DOCUMENTS/CONTRACTS WITHIN 15 DAYS OF RECEIPT OF THIS NOTICE.**

---------------------------------------------------------------------------------------------------------------------------

# VERIFIED WRITTEN DEMAND OF TAXABLE CONTRACTS
# AND REQUEST FOR TAX RECORDS

*Notice to Agent is Notice to Principal  -   Notice to Principal is Notice to Agent*

### ( __IRS' Internal Revenue Code sections 6036 and 6903__ )

***In compliance with the UNITED STATES STATUTES AT LARGE containing the Internal Revenue Code
of 1954 under Internal Revenue Code 7851.  APPLICABILTY OF REVENUE LAWS/REVENUE
OFFENSES & Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).***

<u>REFERENCE:</u>    Subject phantom un-reported Tax pertaining to the security instruments pertaining
to "loan" number **0016237521**, and which is the reference for all questions and
requests concerning **IDENTITY THEFT** and **TAX EVASION,** as described herein.

---------------------------------------------------------------------------------------------------------------------------

To Aurora Loan Services LLC.  *( party claiming Fiduciary status )*:

This demand letter is being sent to you in regard to the Tax Returns, Schedules and Payments that were submitted,
reported/or unreported to the Internal Revenue Service, in regard to the accounting and servicing of the above-referenced
""loan"" transaction and its designated security instruments, namely the Deed of Trust/Mortgage and Note.

Additionally, this letter also serves as notice, request and demand for clarification, validation and verification of the
following:

a.  Any and all applicable and taxable events, including but not limited to Sales, Transfers, Assignments, and Insurance
claim receipts;

b.  The unauthorized use and misuse of my personal identity, including my assigned Social Security Number as
provided by the Social Security Administration;

c.  Any and all **Taxable transfers** reported/or unreported to the Internal Revenue Service under my Social Security Number without my knowledge or consent;

d.  The **Funding sources** for said ""loan"";

e.  Any and all **Legal and Beneficial tax ownerships** reported/or unreported to the Internal Revenue Service without my knowledge or consent, and absent an official, signed Internal Revenue Service Power of Attorney;

f.  Any and all Tax **charges** reported/or unreported to the Internal Revenue Service;

g.  Any and all Tax **credits** reported/or unreported to the Internal Revenue Service;

h.  Any and all Tax **debits** reported/or unreported to the Internal Revenue Service;

i.  Any and all Tax **transactions** reported/or unreported to the Internal Revenue Service;

j.  Any and all Tax **reversals** reported/or unreported to the Internal Revenue Service;

k.  Any and all Tax **actions** reported/or unreported to the Internal Revenue Service;

l.  Any and all Tax **payments** submitted, reported/or unreported to the Internal Revenue Service;  and

m.  Any and all Tax **analyses and records** in existence related to the servicing, transfers, and/or assignments of the security instruments pertaining to this ""loan"" account, from its origination to the present date, whether reported/or unreported to the Internal Revenue Service.

## REQUEST FOR VALIDATION, VERIFICATION, and IRS TAX INFORMATION

1.  I hereby demand absolute, verified evidence from you that you possess the original, wet-ink signed, certified/or uncertified security instruments regarding the above-referenced ""loan"" account as the true Holder In Due Course. In the event you can not or do not supply me with the said security instruments, it will be construed as an admittance and positive confirmation on your part that you never really created or owned it, and/or that you do not currently have said instruments in your possession.

2.  I also hereby demand that the **chain of transfer tax** reported to the Internal Revenue Service indicating its transfer from you to wherever the security may now be promptly sent to me as well.  Absent the actual evidence of the original security instruments, I have no choice but to dispute the validity of your alleged lawful fiduciary phantom ownership, funding of the transaction, any entitlement rights, and the current debt and amounts you allege are owed.

    By debt, I am referring to the **tax principal balance** reported to the Internal Revenue Service; the **tax calculated monthly payment** reported to the Internal Revenue Service;  and any **tax fees claimed to be owed** by you, or any trust, or entity you may service or sub-service, or act as an agent for, or that you claim to represent, that was reported to the Internal Revenue Service.

3.  In order to independently validate this debt, I will be requesting and conducting a complete investigation, review and tax accounting of this "loan" transaction and its designated security instruments, (namely the Deed of Trust/Mortgage and Note) from its inception through the present date, as may have been reported/or unreported to the Internal Revenue Service from all applicable regulating authorities.

4.  Upon your receipt of this demand letter, you must refrain from reporting any negative credit information *(if any)* regarding this account to any credit reporting agency, until you have fully and appropriately responded to each of the tax requests, and in regard to my identity and social security number as assigned by the Social Security Administration.  To do so would be in violation of the 1974 Privacy Act, and Tax Identity Theft Act.  Furthermore, the Identity Theft Deterrence Act (2003) ["ITADA"] amended U.S. Code Title 18, § 1028 to state that "Fraud related to activity in connection with identification documents, authentication features, and information".  The statute now makes the possession of any "means of identification" to "knowingly transfer, possess, or use without lawful authority" a federal crime.

5.  I also highly recommend that you conduct your own investigation and audit of this "loan" account from its inception in order to validate it, and to verify whether the debt you currently claim is owed to you and any initiated actions have had the required prior clearance from the UNITED NATIONS and the proper governing authorities of the United States government, in the form of a valid, signed **Delegation Order** from the commissioner and Office of The Inspector General of the Social Security administration.

6.  I am also stipulating that you verify and validate the **taxable debt**, so that it is accurate, to the penny, and provide me with verification as to whether it was properly and timely reported to the Internal Revenue Service on a valid and timely tax return, along with my written consent in the form of an IRS form 2848, Power of Attorney.  Please submit a

certified copy of said tax returns for applicable years to me within ten (10) days.

7. Please <u>DO NOT RELY ON ANY PREVIOUS TAX REPORTS</u> that may have been reported to the Internal Revenue Service by any mortgage Servicing companies, or from the ""loan"" originator's own records, including but not limited to any tax assurances or tax indemnity agreements reported to the Internal Revenue Service. **Instead**, I demand that you conduct a full tax audit and investigation of this ""loan"" account and provide me with verification as to whether it was properly and <u>timely</u> reported to the Internal Revenue Service on valid and timely tax returns, including signed **delegation orders** from each agency, namely the Internal Revenue Service and the Social Security Administration.

8. In the research, audit and examination of the tax documents that may be reported/or unreported to the Internal Revenue Service, as pertains to said ""loan"" in this matter, we have thus far identified numerous violations as well as issues of identity theft, mail fraud, notary fraud, securities fraud, identity theft, tax evasion through unreported tax returns, just to name a few.

My research also strongly indicates that you may have engaged in various schemes, violations of state and federal laws, and tax-related predatory lending practices, including but not limited to the following:

## A.  IRC - 26 USC §7206  FRAUD AND FALSE STATEMENTS:

Any person who -

(1)  Declaration UNDER PENALTIES OF PERJURY:        *[ See Attached EXHIBIT A ]*

***"Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; ... "***

- Inflating the appraisal of this property;
- Increasing the amounts of monthly payments;
- Increasing the principal balance owed;
- Increasing escrow payments;
- Increasing the amounts applied and attributed toward interest on this account;
- Decreasing the proper amounts applied and attributed toward the principal on this "loan" account;
- And assessed, charged and/or collected fees, expenses and miscellaneous charges that I am not legally obligated to pay under the Mortgage/Deed of Trust, and Note.

### 1954 STATUES AT LARGE:

The offenses proscribed by 26 USC §7206 include:

- willfully making a false declaration under penalties of perjury;
- willfully assisting in the preparation of a false tax document;
- executing fraudulent bonds, permits and entries;
- removing or concealing taxable goods with intent to defraud;  and
- willfully concealing property or withholding/falsifying documents in connection with any compromise or closing agreement.

*Under 26 USC §7206, a violation of the statute is punishable by a maximum fine of $100,000 ($500,000 in the case of a corporation), or imprisonment of not more than three years, or both, together with the costs of prosecution. However, the criminal fine provisions under 18 USC §3571 increase the maximum permissible fines for a violation of 26 USC §7206 to not more than $250,000 for individuals and $500,000 for corporations. Alternatively, if any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss.*

# VERIFIED WRITTEN DEMAND OF TAXABLE CONTRACT

I now request that you provide me with substantiated, validated, and verified proof that I have **not** been the victim of such **identity theft**, **tax evasion**, and erroneous servicing practices.

Since this is a **VERIFIED WRITTEN DEMAND OF TAXABLE CONTRACT** request, in compliance with the [UNITED STATES STATUTES AT LARGE containing the Internal Revenue Code of 1954 under Internal Revenue Code 7851. APPLICABILTY OF REVENUE LAWS/REVENUE OFFENSES & Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e), there are substantial penalties and fines for non-compliance, or failure to answer my questions within twenty (20) business days of its receipt, and 60 business days to resolve my concerns.

In order to conduct the examination of this taxable "loan", whether reported/or unreported to the Internal Revenue Service, I must fully and immediate disclosure, including copies of all pertinent information, and/or reports outstanding for which I do not want to be liable for to the Internal Revenue Service, especially as it pertains to the false and forged security documents that may be placed on the record. Please provide me with factual and detailed answers, point by point, to the following tax-related questions, as well as requested disclosures and documents, verifying under penalty of perjury, that each question was validated, verified and reported to the Internal Revenue Service with signed delegation orders, as follows:

1.  Was this "loan" originated in **lawful compliance** with all federal and state laws, and regulations, including but not limited to, Title 62 of the Revised Statutes, RESPA, TILA, the Fair Debt Collection Practices Act ("FDCPA"), HOEPA and other laws?  Please AFFIRM or DENY as to whether it was reported to the Internal Revenue Service, and timely filed on an Internal Revenue Service tax return, and provide evidence thereof.

2.  Was the origination and/or any sale or transfer of this "loan" account, or monetary/ security instruments conducted in complete accordance with all applicable state and federal laws, was it a lawful sale with full and complete disclosure to all parties with an interest?  Please AFFIRM or DENY as to whether it was reported to the Internal Revenue Service, and timely filed on an Internal Revenue Service tax return, and provide evidence thereof.

3.  Please disclose whether the claimed holder in due course of the monetary/security instruments, the Deed of Trust/Mortgage and Note, the asset, is in compliance with statutes, state and federal laws, and tell me who is entitled to the benefits of payments?  Please AFFIRM or DENY as to whether it was reported to the Internal Revenue Service, and timely filed on an Internal Revenue Service tax return, and provide evidence thereof.

4.  Were all transfers, sales, Power of Attorney, monetary/security instruments' ownership, entitlements, disclosures of actual funding source, terms, costs, commissions, rebates, kickbacks, and fees properly and fully disclosed to all parties of interest, including but not limited to, the period commencing with the original "loan" solicitation, prior to closing, and up to the present time, including disclosures of any and all parties involved, and the instruments, assignments, letters of transmittal, certificates of asset-backed securities and any subsequent transfer thereof?  Please AFFIRM or DENY as to whether it was reported to the Internal Revenue Service, and timely filed on an Internal Revenue Service tax return, and provide evidence thereof.

5.  Has each Servicer and sub-Servicers of this Mortgage/Deed of Trust serviced same in accordance with all applicable statutes and laws, and the terms of Mortgage/Deed of Trust, monetary/security instruments, including but not limited to, all accounting or bookkeeping entries and records, commencing from the original solicitation until the present time, including any and all parties involved, the instruments, assignments, letters of transmittal, certificates of asset-backed securities, and any subsequent transfer thereof?  Please AFFIRM or DENY as to whether it was reported to the Internal Revenue Service, and timely filed on an Internal Revenue Service tax return, and provide evidence thereof.

6.  Has this Mortgage/Deed of Trust "loan" account been credited, debited, adjusted, amortized and charged correctly, commencing from its inception until the present time, and including any and all parties involved, the instruments, assignments, letters of transmittal, certificates of asset-backed securities, and any subsequent transfer thereof?  Please AFFIRM or DENY as to whether it was reported to the Internal Revenue Service, and timely filed on an Internal Revenue Service tax return, and provide evidence thereof.

7.  Has **interest** been properly calculated and applied to this "loan?  Please AFFIRM or DENY as to whether it was reported to the Internal Revenue Service, and timely filed on an Internal Revenue Service tax return, and provide evidence thereof.

8.  Have the **principal balances** been properly calculated, amortized, fully credited and accounted for?  Please AFFIRM or DENY as to whether it was reported to the Internal Revenue Service, and timely filed on an Internal Revenue Service tax return, and provide evidence thereof.

9.  Have **charges, fees or expenses,** not obligated in any written agreement, been charged, assessed or collected from this "loan" account, or any other related account, arising out of the subject "loan" transaction?  Please AFFIRM or DENY as to whether it was reported to the Internal Revenue Service, and timely filed on an Internal Revenue Service tax return, and provide evidence thereof.

10. Additionally, I will require answers, in writing, to various servicing questions. For each record kept on computer, or in any other electronic file or format, please provide a certified paper copy of any and all information, in each and every field, or record from each computer system, program or database used by you, the servicer, and/or the party you claim to represent, that contains any information on this "loan" account. Please <u>AFFIRM</u> or <u>DENY</u> as to whether any of this information was ever reported to the Internal Revenue Service, and timely filed on an IRS tax return, and provide evidence thereof.

I am also requesting that you please send to me, at my mailing address indicated herein, **certified copies of the documents** requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding this "loan" account, and please <u>AFFIRM</u> or <u>DENY</u> as to whether each document was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

1. Any **certificated or un-certificated security** used for the funding of this "loan" account; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

2. Any and all **"Pooling Agreement(s)" or "Servicing Agreements"** between the nominal "lender" at the "loan" closing, and any party or parties who could claim an interest in the "loan" closing or security documents pertaining thereto, and any government-sponsored entity involved, hereinafter GSE, or other party; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

3. Any and all **"Deposit Agreement**(s)" between the nominal "lender" at the "loan" closing and any party or parties who could claim an interest in the "loan" closing or security documents pertaining thereto and any GSE or other party; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

4. Any and all **"Servicing Agreement**(s)" between the nominal "lender" at the "loan" closing and any party or parties who could claim an interest in the "loan" closing or security documents pertaining thereto, and any GSE or other party; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

5. Any and all **"Tax Custodial Agreement**(s)" between the nominal "lender" at the "loan" closing and any party or parties who could claim an interest in the "loan" closing or security documents pertaining thereto, and any GSE or other party; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

6. Any and all **"Master Purchasing Agreement**(s)" between the nominal "lender" at the "loan" closing and any other party or parties who could claim an interest in the "loan" closing or security documents pertaining thereto and any GSE or other party; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

7. Any and all **"Issuer Agreement**(s)" between the nominal "lender" at the "loan" closing and any other party or parties who could claim an interest in the "loan" closing, or security documents, pertaining thereto, and any GSE or other party; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

8. Any and all **"Commitment to Guarantee"** agreement(s) between the nominal "lender" at the "loan" closing and any other party or parties who could claim an interest in the "loan" closing or security documents pertaining thereto, and any GSE, or other party; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

9. Any and all **"Release of Document"** agreement(s) between the nominal "lender" at the "loan" closing and any other party or parties who could claim an interest in the "loan" closing or documents pertaining thereto, and any GSE, or other party; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

10. Any and all **"Master Agreement for Servicer's Principal and Interest Custodial Account"** between the nominal "lender" at the "loan" closing and any other party or parties who could claim an interest in the "loan" closing or security documents pertaining thereto, and any GSE, or other party; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required Internal Revenue Service tax return, and provide evidence thereof.

11. Any and all **"Release of Interest"** agreement(s) between the nominal "lender" at the "loan" closing, and any party, or parties, who could claim an interest in the "loan" closing, or security documents pertaining thereto, and any GSE, or other party;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required  Internal Revenue Service tax return, and provide evidence thereof.

12. Any **Trustee agreement**(s) between the nominal "lender" at the "loan" closing, and any party, or parties, who could claim an interest in the "loan" closing, or security documents pertaining thereto, and trustee(s) regarding this account, or pool accounts, with any GSE, or other party;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, whether it was timely filed on the required  Internal Revenue Service tax return, and provide evidence thereof.

13. Please provide a copy of the UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC") form **INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES**. (Form 3);  please <u>AFFIRM</u> or <u>DENY</u> as    to whether this was reported to or made part of a report submitted to the SEC or IRS, whether it was timely filed     on any required SEC form or Internal Revenue Service tax return, and provide evidence thereof.

Additionally, I am requesting that you please send me actual copies, front and back, of:

1. Any documentation evidencing any **trust relationship**s regarding the Mortgage/Deed of Trust and Note in this matter; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

2. Any and all document(s) **establishing any Trustee of record** for the Mortgage/Deed of Trust and any Note;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

3. Any and all document(s) establishing the **date of any appointment of Trustee**(s) for this Mortgage/Deed of Trust and any Note, including any and all assignments, or transfers, or nominees of any substitute trustee(s);  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

4. Any and all document(s) establishing any **Grantor for this Mortgage / Deed of Trust** and any Note;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

5. Any and all document(s) establishing any **Grantee for this Mortgage or Deed of Trust** and any Note;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

6. Any and all document(s) establishing any **Beneficiary for this Mortgage / Deed of Trust** and any Note;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

7. Any documentation evidencing the Mortgage or Deed of Trust is not a **constructive trust** or any other form of trust; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

8. All **data**, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account, from the inception of this account to the date written above;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

9. All **descriptions and legends** of Codes used in your mortgage servicing and accounting system so the examiners, auditors and experts retained to audit and review this Mortgage/Deed of Trust account may properly conduct their work;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

10. All assignments, transfers or other documents evidencing a **transfer, sale, or assignment** of this mortgage, deed of trust, monetary instrument or other document that secures payment to this obligation in this account from the inception of this account to the present date, including any such assignment on MERS;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

11. All records, electronic or otherwise, of **assignments** of this Mortgage/Deed of Trust, Note, monetary instrument or servicing rights to this mortgage including any such assignments on MERS;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

12. All **deeds in lieu, and/or modifications** to this Mortgage/Deed of Trust, monetary instrument or deed of trust from the inception of this account to the present date;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

13. The front and back of each and every **canceled check, money order, draft, debit or credit** notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

14. The front and back of each and every canceled check, draft or debit notice issued for **payment of closing costs, fees and expenses** listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees and points;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

15. Front and back copies of all **payment receipts**, checks, money orders, drafts, automatic debits and written evidence of payments made by others on this account. Reported to the Internal Revenue Service and filed on an Internal Revenue Service tax return;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

16. **All letters, statements and documents sent** by your company;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

17. All **letters, statements and documents sent by agents**, attorneys or representatives of your company. Reported to the Internal Revenue Service and filed on an Internal Revenue Service tax return.

18. All **letters, statements and documents** sent by previous servicers, sub-servicers, or others in your account file or in your control or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

19. All **letters, statements and documents** contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

20. All **electronic transfers, assignments and sales of the note**, asset, mortgage, deed of trust or other security instrument;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

21. All copies of **property inspection reports, appraisals and reports** done on the property;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

22. All **invoices** for each charge such as inspection fees, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to this Mortgage/Deed of Trust account from the inception of this account to the present date;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

23. All **checks** used to pay invoices for each charge such as inspection fees, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged, to this account from the inception of this account to the present date;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

24. All **agreements, contracts and understandings with vendors** that have been paid for any charge on this account from the inception of this account to the present date; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

25. All **account servicing records**, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers and documents that relate to the accounting of this account from the inception of this account to the present date; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

26. All **account servicing transaction records**, ledgers and registers detailing how this account has been serviced from the inception of this account to the present date; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

With Regard to **ACCOUNT ACCOUNTING AND SERVICING SYSTEMS**:

1. Please identify each accounting and servicing system used by you, and any sub-servicers or previous servicers, from the inception of this account to the present date, so that experts can decipher the data provided; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

2. For each accounting and servicing system identified by you, and any sub-servicers or previous servicers, from the inception of this account to the present date, and provide the name and address of the company that designed and sold the system; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

3. For each accounting and servicing system used by you, and any sub-servicers or previous servicers, from the inception of this account to the present date, please provide the complete transaction code list for each system; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

WITH REGARD TO **DEBITS** AND **CREDITS**; please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof, and as follows:

1. Please detail each and every **credit** on this account, from the date such credit was posted to this account, as well as the date any credit was received.

2. Please detail each and every **debit** on this account, from the date such debit was posted to this account, as well as the date any debit was received.

3. For each debit and credit listed, please provide me with the **definition** for each corresponding transaction code utilized.

4. For each transaction code, please provide the **master transaction code list** used by you or previous servicers.

With Regard to the Mortgage/Deed of Trust/Note and **ASSIGNMENTS**:

1. Has each sale, transfer or assignment of this Mortgage/Deed of Trust, monetary/security instruments, Note, or any other instrument executed to secure this debt, been recorded in the county property records, in the county and state in which the property is located, from the inception of this account to the present date? Please respond either, Yes or No?; please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

2. If so, why was it <u>NOT</u> reported to or made part of a report submitted to the Internal Revenue Service filed on the required IRS tax return?

3. Is your company the servicer of this Mortgage/Deed of Trust "loan" account or the holder in due course and beneficial owner of this Mortgage/Deed of Trust, monetary/security instrument and/or related Note?; please <u>AFFIRM</u> or <u>DENY</u> as to whether it was reported to or made part of a report submitted by you, or the party you represent, to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

4. Have any sales, transfers or assignments of this Mortgage/Deed of Trust, monetary/security instrument, Note, or any other instrument executed to secure this "loan"/debt been recorded in any electronic fashion, such as MERS, or other internal or external recording system, from the inception of this account to the present date? _Yes or _No?;  please AFFIRM or DENY as  to whether these were reported to or made part of a report submitted by you, or the party you represent, to the Internal Revenue Service, and whether it was timely filed on the required    IRS tax return, and provide evidence thereof.

5. If yes, please detail the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage/deed of trust, or security instrument executed securing the obligation on this account, that was not recorded in the county records where the property is located, whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments;   please AFFIRM or DENY as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

With Regard to **ATTORNEY FEES:**

In answering the questions below, assume attorney fees and legal fees to be one and the same.

1. Have attorney fees ever been assessed to this account from its inception to the present date?  Yes or No?

2. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date, and the date of such assessments to this account.

3. Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4. If yes, please detail each attorney fee to this account, from the inception of this account to the present date, and the  date of such assessments to this account.

5. Please provide the name and address of each attorney or law firm that has been paid any fees or expenses related to this account, from the inception of this account to the present date.

6. Please identify, in writing, the provision, paragraph, section or sentence of any Note, Mortgage/Deed of Trust, or any agreement I signed that authorized the assessment, charge or collection of attorney's fees.

7. Please detail in writing each attorney fee assessed from this account, and indicate for what corresponding payment period or month such fee was assessed, from the inception of this account to the present date.

8. Please detail in writing any adjustments in attorney fees collected and on what date such adjustment was made, and the reason for such adjustment.

9. Has interest been charged on any attorney fees that were assessed or charged to this account?  Yes or No?

10. Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account?  Yes or No?

11. Please send me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account, from the inception to the present date.

With Regard to **SUSPENSE/UNAPPLIED ACCOUNTS**:

Please AFFIRM or DENY as to whether each "loan" account was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.  In answering these questions, treat the term suspense account and unapplied account as one and the same.

1. Has there been any suspense or unapplied transactions on this "loan" account from the inception of this account to the present date?  Yes or No?;  please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

2. Please detail each and every suspense or unapplied transaction, including debits and credits, which have occurred on this account, from the inception of this account to the present date;  please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

With Regard to **LATE FEES**:

Please consider the terms late fees and late charges to be one and the same.

1. Have you reported the collection of any late fees on this account as interest in any statement to the INTERNAL REVENUE SERVICE?  Yes or No?;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

2. Have any previous servicers, or sub-servicers, of this Mortgage/Deed of Trust account reported the collection of late fees on this account as interest in any statement to the INTERNAL REVENUE SERVICE? Yes or No?;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

3. Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

4. Are late fees considered interest? Yes or No?;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

5. Please detail what expenses and damages you incurred for any payments made that were late;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

6. Were any of these expenses or damages charged or assessed to this account in any other way?  Yes or No?;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

7. If yes, please describe what expenses or damages were charged or assessed to this account?;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

8. Please describe what expenses you or others undertook due to any payments made that were late;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

9. Please describe what damages you or others undertook due to any payments made that were late;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

10. Please identify the provision, paragraph, section or sentence of any Note, Mortgage/Deed of Trust or any agreement that I signed that authorized the assessment or collection of late fees;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

11. Please detail each late fee assessed to this account, and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

12. Please detail any adjustments in late fees assessed and on what date such adjustments were made, and the reason for such adjustments;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

13. Has interest been charged on any late fee assessed or charged to this account? Yes or No?;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

14. Is interest allowed to be assessed or charged on late fees to this account?  Yes or No?;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

15. Have any late charges been assessed to this account?  Yes or No;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

16. If yes, how much in total late charges have been assessed to this account, from the inception of this account to the present date?;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

17. Please provide the payment dates you, or other previous servicers or sub-servicers, of this account claim I have been late with a payment, from the inception of this account to the present date;  please <u>AFFIRM</u> or <u>DENY</u> as to whether each was reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

With Regard to **PROPERTY INSPECTIONS**:

Consider property inspection and inspection fee terms that apply to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

1. Have the property inspections been conducted from the inception of this account to the present date?  Yes or No? ; please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

2. If yes, please tell me the date of each property inspection conducted on my subject property that is the secured interest for this mortgage/deed of trust and/or note;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

3. Please tell me the price charged for each property inspection;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

4. Please tell me the date of each property inspection;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

5. Please tell me the name and address of each company and person who conducted each property inspection on this property;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

6. Please tell me why property inspections were conducted on the subject property;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

7. Please tell me how property inspections are beneficial;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

8. Please tell me how property inspections are protective of subject property;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

9. Please explain you or the party you represent's policy on property inspections;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

10. Do you consider the payment of inspection fees as a cost of collection?  Yes or No? ;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

11. If YES, why? ;  please <u>AFFIRM</u> or <u>DENY</u> as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

12. Do you use your property inspections to collect debts? Yes or No? ; please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

13. Have you used any portion of the property inspection process on subject property to collect a debt, payment or obligation? Yes or No? ; please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

14. If YES, please answer, WHEN and WHY? ; please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

15. Please identify in writing the provision, paragraph, section or sentence of any Note, Mortgage/Deed of Trust or any security agreement or instrument I signed that authorized the assessment or collection of property inspection fees; please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

16. Have you labeled in any record or document sent to me, any property inspection as a miscellaneous advance? Yes or No? ; please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

17. If YES, why? ; please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

18. Have you labeled in any record or document sent to me, a property inspection as a legal fee or attorney fee? Yes or No?; please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

19. If YES, why?  Please verify all;  please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.20.  Please detail each inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

21. Please detail any adjustments in inspection fees assessed, and on what date such adjustment was made, and the reasons for such adjustment.

22. Has interest been charged on any inspection fees assessed or charged to this account?  Yes or No?

23. If yes, when and how much was charged?

24. Is interest allowed to be charged on inspection fees charged or assessed to this account?  Yes or No?

25. How much in inspection fees have been assessed to this account, from the inception of this account to the present date?

26. Please forward copies of all property inspections made on subject property in this Mortgage/Deed of Trust account file.

27. Has any fee assessed or charged for property inspections been placed into an escrow account?  Yes or No?;  please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

20. Please detail each inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date;  please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

With Regard to **BROKER PRICE OPINIONS** (BPO) Fees:

1. Have any Broker Price Opinions been conducted on subject property?  Yes or No?

2. If yes, please tell me the date of each BPO conducted on subject property that is the secured interest for this Mortgage/Deed of Trust and/or Note.

3. Please tell me the price of each BPO.

4. Please tell me who conducted the BPO.

5.  Please tell me why BPOs were conducted on the subject property.

6.  Please tell me how BPOs are beneficial.

7.  Please tell me how BPOs are protective of the subject property.

8.  Please explain your policy on BPOs.

9.  Have any BPO fees been assessed to this account?  Yes or No?

10. If yes, how much in total BPO fees have been charged to this account?

11. Please identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of a BPO fee.

12. Please send me copies of all BPO reports that have been done on the "loan" subject property.

13. Has any fee charged or assessed for a BPO been placed into an escrow account?  Yes or No?

With Regard to **SERVICING**:

1.  Did the originator or previous servicers of this "loan" account have any financing agreements or contracts with your company or an affiliate of your company?

2.  Did the originator or previous servicers of this "loan" account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating, or administering this "loan"?  If yes, please itemize each form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

3.  Please identify where the originals of this entire account file are currently located and how they are being stored, kept and protected.

4.  Where is the original deed of trust or Mortgage/Deed of Trust and/or Note I signed located?   Please describe its physical location and whether anyone is holding this Note as a custodian or trustee, if applicable, and identify them.

5.  Since the inception of this account, has there been any assignment of this monetary/security instruments, asset to any other party?  If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

6.  Since the inception of this account, has there been any sale or assignment of the servicing rights to any other party?  If the answer is yes, identify the names and addresses of each individual, party, bank, trust or entity that has received such assignments or sale.

7.  Since the inception of this account, have any sub-servicers serviced any portion of this Mortgage/Deed of Trust account?  If the answer is yes, identify the names and addresses of each individual, party, bank, trust or entity that has sub-serviced this Mortgage/Deed of Trust account.

8.  Has the Mortgage/Deed of Trust account been made a part of any mortgage pool since the inception of this "loan"? If yes, please identify each account mortgage pool that this mortgage has been made a part of from the inception of this account to the present date.

9.  Has each assignment of this asset, the monetary/security instruments been recorded in the county land records where the property associated with this Mortgage/Deed of Trust account is located?;  please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

10. Has there been any electronic assignment of this Mortgage/Deed of Trust and/or, with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service, or computer program?  If yes, identify the name and address of each individual, entity, party, bank, trust or organization or servicers that have been assigned mortgage servicing rights for this account as well as the beneficial interest to the payments of principal and interest on this "loan".

11. Have there been any investors *(as defined by your industry)* who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this Mortgage/Deed of Trust account has ever been a part of, from the inception of this account to the present date?  If yes, identify the name and address of every

individual, entity, organization and/or trust; please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

12. Please identify the parties and their addresses to all sales contracts, servicing agreements, assignments, allonges, endorsements, transfers, indemnification agreements, recourse agreements, and any agreement related to this account from the inception of this account to the present date; please AFFIRM or DENY as to whether these were reported to or made part of a report submitted to the Internal Revenue Service, and whether it was timely filed on the required IRS tax return, and provide evidence thereof.

13. How much were you paid for this individual Mortgage/Deed of Trust, and/or Note? What premium was paid?

14. If part of a mortgage pool, what was the principal balance used by you,, or the party you represent, to determine payment for this individual Mortgage/Deed of Trust "loan"?

15. Who did you issue a check or payment to for this Mortgage/Deed of Trust "loan"? Please provide me with copies of the front and back of the canceled check.

17. Would any currently active investor have to approve the foreclosure of subject property? Yes or No?

18. Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

19. Please identify all persons who would have to approve foreclosure of the subject property in this matter.

Please provide me with all the documents and information that I have requested and detailed answers, point by point, to each of my questions, within the lawful time frame. Upon receipt of the documents and answers, an examination will be conducted, that may lead to a further document request and requests to answers to questions, under an additional VERIFIED WRITTEN DEMAND OF TAX CONTRACT AND REQUEST FOR TAX RECORDS in compliance with the UNITED STATES STATUTES AT LARGE containing the Internal Revenue Code of 1954, under Internal Revenue Code 7851. APPLICABILTY OF REVENUE LAWS/REVENUE OFFENSES & Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e); and Truth In Lending Act (TILA).

### Please put all the requested documents in the order of the questions in the order they were asked.

It also appears to be that you, and/or the party(ies) you represent, which may include but not be limited to Aurora Loan Services LLC. is/was, or may have been a foreign Corporation/Trustee for a foreign corporation, and could not/cannot do business in the State of Florida without a valid, signed Delegation Order, signed by and from the commissioner of HUD, I hereby request that you and/or the party(ies) you represent, produce the **Delegation of Authority** document that was signed by the commissioner of the HUD, also under Fla. Statue **617.1501(1) Authority of Foreign Corporation to Conduct Affairs Required** and also, authority from the Social Security Administration, which would permit you to obtain my personal identity, and/or use or transfer my social security number, which was done without my knowledge or consent.

*All Rights Reserved,*

By: _____
**Your Name**

Copies of this "VERIFIED WRITTEN DEMAND OF TAX CONTRACT AND RECORDS REQUEST" in compliance with the UNITED STATES STATUTES AT LARGE, containing the Internal Revenue Code of 1954, under Internal Revenue Code 7851. APPLICABILTY OF REVENUE LAWS/REVENUE OFFENSES & Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e), request for accounting and legal records.

To:   **Aurora Loan Services LLC.**
      7807 E. Peakview Ave.  Suite 410
      Centennial, CO 80111

*Mail Receipt #: 7015 1660 0000 3724 5041*


To:   **Choice Legal P.A.**
      1800 NW 49th St. Suite 120
      Ft. Lauderdale, Fl. 33309

Mail Receipt #: 7015 1660 0000 3724 5300


To:   **NationStar Mortgage**
      350 Highland Drive
      Lewisville, TX 75067

*Mail Receipt #:  7015 1660 0000 3724 5270*


To:   **Cynthia M. Talton**
      McCalla Raymer LLC.
      225 E. Robinson St. Suite 660
      Orlando, Fl.  32801

*Mail Receipt #:  7015 1660 0000 3724 5287*


To:   **Lehman Brothers Bank FSB**
      c/o John Suckow, Alvarez & Marshall
      600Madison Ave.  8th Floor
      New York, N.Y. 10022

*Mail Receipt #:  7015 1660 0000 3724 5256*


To:   **J.P. Morgan Chase Bank**
      Dept. Institutional Trust Services/
      Global Debt, SASCO 2003-04
      4 New York Plaza 6th Floor
      New York, N.Y. 10004

*Mail Receipt #:  7015 1660 0000 3724 5263*

*CC:*

**Mortgage Fraud Division**
**Office of the Attorney General**
The Capitol
Albany, NY 12224-0341

**Consumer Financial Protection Bureau**
**Mortgage Fraud Division  CFPB**
Attn:  Richard Cordray, *Director*
P.O. Box 4503
Iowa City, IA  52244
-----------------------------------------------
Attn:  Richard Cordray, *Director*
1700 G Street, NW
Washington, DC  20552

**Consumer Financial Protection Bureau**
Mortgage Fraud Division
P.O. Box 4503
Iowa City, IA 52244

**United States Attorney General**
Securities Fraud Division
950 Pennsylvania Avenue NW
Washington, DC 20530

**Federal Trade Commission**
Mortgage Fraud Division
600 Pennsylvania Avenue NW
Washington, DC. 20580

**Preet Bharara**, U.S. Attorney
Southern District of New York
Securities & Commodities Fraud Work Group
950 Pennsylvania Avenue NW
Washington, DC  20530-0001

**Jennifer Shasky Calgary**, Director
**Financial Crimes Enforcement Network**
(FinCEN)  -  DEPT. OF TREASURY
1500 Pennsylvania Avenue  NW
Washington, DC  20220

**Thomas J. Curry,** OCC
Office of Thrift Spending - Consumer Asst. Group
1301 McKinney St., Suite 3450
Houston, TX  77010

**INTERNAL REVENUE SERVICE**
Criminal Investigation Division  (CID)
PO Box 192
Covington, Kentucky  41012

**Internal Revenue Service,**
Whistleblower Office  -  SE: WO
1111 Constitution Ave., NW
Washington, DC 20224

**The Honorable Carolyn W. Colvin**
Acting Commissioner
**OIG - Office of the Inspector General**
Social Security Administration
6401 Security Blvd.
Baltimore, Maryland  21235-0001

**Vance S.  Price,** *Deputy Comptroller*
Large Bank Supervision
**Office of Comptroller of the Currency**  (OCC)
250 E. Street, SW
Washington, DC  20219

**George Lekatis,** *President*
**SARBANES OXLEY** Compliance
Professionals Association  (SOXCPA)
General Manager, Compliance LLC
120Q G Street NW Suite 800
Washington DC  20005, USA

**Scott J.  Wilson,** *Examiner In Charge*
**NATIONAL BANK EXAMINERS**
343 Sansome Street, Suite 1150
MAC A0163-110
San Francisco, CA 94163-0101

Eric Schneiderman
**Office of the Attorney General**
Dept. of Justice - Mortgage Fraud Task Force
The Capitol, Albany
Albany, NY  12224-0341

# *ATFJ ASSOCIATION – Mortgage Review*

Kissimmee, Florida 32726
Phone: 805-806-0303
*audits@MortgageReviewAssociation.com*

# *PROPERTY*
# *SECURITIZATION ANALYSIS REPORT<sup>TM</sup>*

**"This is a Securitization Analysis Report and not a Forensic Audit Report"**

## *Prepared for:*

### *EDWIN LOUBRIEL AND CARMEN LOUBRIEL*

*For Property Address*

### *1272 NW 89 TH TER,*
### *PEMBROKE PINES, FL 33024*

*Prepared on:*

### *January 27, 2014*

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq*, it is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: *"...the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court."*

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

# SECTION 1:    TRANSACTION DETAILS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
| --- | --- |
| EDWIN LOUBRIEL | CARMEN LOUBRIEL |
| CURRENT ADDRESS | SUBJECT ADDRESS |
| 1272 NW 89 TH TER, PEMBROKE PINES, FL 33024 | 1272 NW 89 TH TER, PEMBROKE PINES, FL 33024 |

## TRANSACTION PARTICIPANTS

| AMOUNT | MORTGAGE SERVICER | MORTGAGE NOMINEE/BENEFICIARY |
| --- | --- | --- |
| $196,000.00 | Aurora Commercial Corp. Littleton, CO | Mortgage Electronic Registration Systems, Inc. ("MERS") PO Box 2026 Flint, MI 48501-2026 (888)679-MERS |
| **ORIGINAL MORTGAGE LENDER** | **LOAN TYPE** | **TITLE COMPANY** |
| LEHMAN BROTHERS BANK, FSB | Conventional 30 Year Adjustable Rate Mortgage | Not Stated |

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

# SECTION 2:    SECURITIZATION
## SECURITIZATION PARTICIPANTS:

| ORIGINATOR/LENDER | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| **LEHMAN BROTHERS BANK, FSB, et. al. [1] or purchased by them from correspondent lenders** | **LEHMAN BROTHERS HOLDINGS INC.** | **STRUCTURED ASSET SECURITIES CORPORATION.** |
| ISSUING ENTITY | TRUSTEE | MASTER SERVICER/ SERVICER |
| **STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40** | **JPMorgan Chase Bank** | **AURORA LOAN SERVICES INC.** |
| CUSTODIAN | CUT – OFF DATE | CLOSING DATE |
| **JPMorgan Chase Bank or appointee** | **December 1, 2003** | **On or about December 30, 2003** |

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

```
<DOCUMENT> <TYPE>424B5
<SEQUENCE>1
<FILENAME>four24b5.txt
<DESCRIPTION>424B5
<TEXT><PAGE>
```

# PROSPECTUS SUPPLEMENT
## (To Prospectus dated August 26, 2003)

### $830,059,100
(Approximate)

## STRUCTURED ASSET SECURITIES CORPORATION

### Mortgage Pass-Through Certificates, Series 2003-40A



**Aurora Loan Services Inc.,**
Master Servicer

## LEHMAN BROTHERS
Underwriter

The date of this Prospectus Supplement is December 29, 2003

http://www.sec.gov/Archives/edgar/data/808851/000095011603005007/four24b5.txt

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

# Prospectus Summary of Terms

o This summary highlights selected information from this prospectus supplement
  and does not contain all of the information that you need to consider in
  making your investment decision. To understand all of the terms of the
  offering of the certificates, it is necessary that you read carefully this
  entire prospectus supplement and the prospectus.

o While this summary contains an overview of certain calculations, cash flow
  priorities, and other information to aid your understanding, you should read
  carefully the full description of these calculations, cash flow priorities
  and other information in this prospectus supplement and the prospectus before
  making any investment decision.

o Whenever we refer in this prospectus supplement to a percentage of some or
  all of the mortgage loans in the trust fund or in a pool, that percentage has
  been calculated on the basis of the total scheduled principal balance of
  those mortgage loans as of December 1, 2003, unless we specify otherwise. We
  explain in this prospectus supplement under "Description of the
  Certificates--Distributions of Principal" how the scheduled principal balance
  of a mortgage loan is determined. Whenever we refer in this Summary of Terms
  or in the Risk Factors section of this prospectus supplement to the total
  principal balance of any mortgage loans, we mean the total of their scheduled
  principal balances, unless we specify otherwise

Parties

**Seller: Lehman Brothers Holdings Inc.** will sell the mortgage loans to the depositor.

**Depositor:      Structured Asset Securities Corporation**

**Master Servicer:      Aurora Loan Services Inc.**

**Servicers**

    Aurora Loan Services Inc., Colonial Savings, F.A., GreenPoint Mortgage
Funding, Inc., IndyMac Bank, F.S.B. and Washington Mutual Bank, FA.

**Trustee:    JPMorgan Chase Bank**

Cap Provider

    The trustee, on behalf of the trust fund, will enter into an interest rate
cap agreement with Lehman Brothers Special Financing Inc. for the benefit of
the Class B1 and Class CX Certificates.

December 30, 2003 (the "Closing Date")

December 1, 2003 (the "Cut-off Date")

The Offered Certificates

Classes of Certificates

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

Structured Asset Securities Corporation's Mortgage Pass-Through
Certificates, Series 2003-40A, consist of the classes of certificates listed
in the table on the following page, together with the Class B4, Class B5,
Class B6, Class P-I, Class P-II and Class CX Certificates. Only the classes of
certificates listed in the table are offered by this prospectus supplement.

http://www.sec.gov/Archives/edgar/data/808851/000095011603005007/four24b5.txt

# Trust Agreement within the Prospectus

General

The Certificates will be issued pursuant to a trust agreement (the "Trust
Agreement") dated as of December 1, 2003 among the Depositor, the Master
Servicer and the Trustee. Reference is made to the Prospectus for important
information in addition to that set forth herein regarding the terms and
conditions of the Trust Agreement and the Offered Certificates. Offered
Certificates in certificated form will be transferable and exchangeable at the
Corporate Trust Office of the Trustee, which will serve as certificate
registrar and paying agent. The Trustee will provide to a prospective or
actual Certificateholder upon written request, a copy (without exhibits) of
the Trust Agreement. Requests should be addressed to JPMorgan Chase Bank, 4 New
York Plaza, 6th Floor, New York, New York 10004, Attention: Institutional
Trust Services/Global Debt, SASCO 2003-40A.

Assignment of Mortgage Loans

The Mortgage Loans will be assigned to the Trustee, together with all
principal and interest received with respect to the Mortgage Loans on and
after the Cut-off Date, other than Scheduled Payments due on or prior to that
date. The Trustee will, concurrently with such assignment, authenticate and
deliver the Certificates. Each Mortgage Loan will be identified in a schedule
appearing as an exhibit to the Trust Agreement which will specify with respect
to each Mortgage Loan, among other things, the original principal balance and
the Scheduled Principal Balance as of the close of business on the Cut-off
Date, the Mortgage Rate, the Scheduled Payment, the maturity date and the
applicable Servicer of such Mortgage Loan.

As to each Mortgage Loan, the following documents are generally required to
be delivered to the Trustee (or its custodian) in accordance with the Trust
Agreement: (1) the related original Mortgage Note endorsed

S-86

<PAGE>

without recourse to the Trustee or in blank, (2) the original Mortgage with
evidence of recording indicated (or, if the original recorded Mortgage has not
yet been returned by the recording office, a copy thereof certified to be a true
and complete copy of such Mortgage sent for recording) or, in the case of a
cooperative loan, the original security agreement and related documents, (3) an
original assignment of the Mortgage to the Trustee or in blank in recordable
form (except as described below) or, in the case of a cooperative loan, an
original assignment of security agreement and related documents, (4) the
policies of title insurance issued with respect to each Mortgage Loan (other
than a cooperative loan), and (5) the originals of any assumption, modification,
extension or guaranty agreements. With respect to the Servicers, it is expected
that the Mortgages or assignments of Mortgage with respect to many of the

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-*

Mortgage Loans will have been recorded in the name of an agent on behalf of the holder of the related Mortgage Note. In those cases, no Mortgage assignment in favor of the Trustee will be required to be prepared, delivered or recorded. Instead, the applicable Servicer will be required to take all actions as are necessary to cause the Trustee to be shown as the owner of the related Mortgage Loan on the records of the agent for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by the agent.

http://www.sec.gov/Archives/edgar/data/808851/000095011603005007/four24b5.txt

(this space intentionally left black)

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

```
<DOCUMENT> <TYPE>EX-4
<SEQUENCE>4 <FILENAME>ex4-1.txt
<DESCRIPTION>EXHIBIT 4.1
<TEXT><PAGE>
```

EXECUTION COPY

## STRUCTURED ASSET SECURITIES CORPORATION, as Depositor,

### AURORA LOAN SERVICES INC., as Master Servicer,

and

### JPMORGAN CHASE BANK, as Trustee

----------------------------

# TRUST AGREEMENT

## Dated as of December 1, 2003

----------------------------

## STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2003-40A

http://www.sec.gov/Archives/edgar/data/1274653/000095011604000160/ex4-1.txt

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

# ARTICLE II

# DECLARATION OF TRUST;
## ISSUANCE OF CERTIFICATES

Section 2.01. Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans.

(a) Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02, 2.04, 2.05 and 2.06, in trust, all the right, title and interest of the Depositor in and to the Mortgage Loans (including the Participations). Such conveyance includes, without limitation, the right to all distributions of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date (other than payments of principal and interest due on or before such date), and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date, together with all of the Depositor's right, title and interest in and to the Collection Account and all amounts from time to time credited to and the proceeds of the Collection Account, the Certificate Account and all amounts from time to time credited to and the proceeds of the Certificate Account, any Escrow Account established pursuant to Section 9.06 hereof and all amounts from time to time credited to and the proceeds of any such Escrow Account, any REO Property and the proceeds thereof, the Depositor's rights under any Insurance Policies related to the Mortgage Loans, and the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged

48

<PAGE>

Properties and any Additional Collateral, and any proceeds of the foregoing, to have and to hold, in trust; and the Trustee declares that, subject to the review provided for in Section 2.02, it (or a Custodian on its behalf) has received and shall hold the Trust Fund, as trustee, in trust, for the benefit and use of the Holders of the Certificates and for the purposes and subject to the terms and conditions set forth in this Agreement, and, concurrently with such receipt, has caused to be executed, authenticated and delivered to or upon the order of the Depositor, in exchange for the Trust Fund, Certificates in the authorized denominations evidencing the entire ownership of the Trust Fund.

Concurrently with the execution and delivery of this Agreement, the Depositor does hereby assign to the Trustee all of its rights and interest under the Mortgage Loan Sale Agreement; including all rights of the Seller under the applicable Servicing Agreement to the extent assigned under the Mortgage Loan Sale Agreement. The Trustee hereby accepts such assignment, and shall be entitled to exercise all rights of the Depositor under the Mortgage Loan Sale Agreement as if, for such purpose, it were the Depositor. The foregoing sale, transfer, assignment, set-over, deposit and conveyance does not and is not intended to result in creation or assumption by the Trustee of any obligation of the Depositor, the Seller, or any other Person in connection with the Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth herein. The Depositor hereby confirms its direction to the Trustee, solely in its capacity as Trustee hereunder, to execute and deliver the Cap Agreement. The Trustee shall have no duty or responsibility to enter into any other interest rate cap agreement upon the expiration or termination of the Cap Agreement.

In addition, with respect to any Pledged Asset Mortgage Loan, the Depositor does hereby transfer, assign, set-over and otherwise convey to the Trustee without recourse (except as provided herein) (i) its rights as assignee

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

Page | 9

under any security agreements, pledge agreements or guarantees relating to the Additional Collateral supporting any Pledged Asset Mortgage Loan, (ii) its security interest in and to any Additional Collateral, (iii) its right to receive payments in respect of any Pledged Asset Mortgage Loan pursuant to the Additional Collateral Servicing Agreement, and (iv) its rights as beneficiary under the Surety Bond in respect of any Pledged Asset Mortgage Loan. Notwithstanding anything to the contrary in this Agreement, the Trust Fund shall not obtain title to or beneficial ownership of any Additional Collateral as a result of or in lieu of the disposition thereof or otherwise.

(b) In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or any custodian acting on the Trustee's behalf, if applicable, the following documents or instruments with respect to each Mortgage Loan (each a "Mortgage File") so transferred and assigned (other than the Participations):

(i) with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank (in each case, with all necessary intervening endorsements as applicable);

(ii) the original of any guarantee, security agreement or pledge agreement relating to any Additional Collateral and executed in connection with the Mortgage Note, assigned to the Trustee;

49

<PAGE>

(iii) with respect to each Mortgage Loan other than a Cooperative Loan, the original recorded Mortgage with evidence of recording indicated thereon and the original recorded power of attorney, if the Mortgage was executed pursuant to a power of attorney, with evidence of recording thereon or, if such Mortgage or power of attorney has been submitted for recording but has not been returned from the applicable public recording office, has been lost or is not otherwise available, a copy of such Mortgage or power of attorney, as the case may be, certified to be a true and complete copy of the original submitted for recording. If, in connection with any Mortgage Loan, the Depositor cannot deliver the Mortgage with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost, the Depositor shall deliver or cause to be delivered to the Trustee (or its custodian), in the case of a delay due to recording, a true copy of such Mortgage, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such Mortgage delivered to the Trustee (or its custodian) is a true copy and that the original of such Mortgage has been forwarded to the public recording office, or, in the case of a Mortgage that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and a written Opinion of Counsel acceptable to the Trustee and the Depositor that an original recorded Mortgage is not required to enforce the Trustee's interest in the Mortgage Loan;

(iv) the original of each assumption, modification or substitution agreement, if any, relating to the Mortgage Loans, or, as to any assumption, modification or substitution agreement which cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such assumption, modification or substitution agreement has been delivered for recordation, a photocopy of such assumption, modification or substitution agreement, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

assumption, modification or substitution agreement delivered to the Trustee (or its custodian) is a true copy and that the original of such agreement has been forwarded to the public recording office;

(v) with respect to each Non-MERS Mortgage Loan other than a Cooperative Loan, the original Assignment of Mortgage for each Mortgage Loan;

(vi) if applicable, such original intervening assignments of the Mortgage, notice of transfer or equivalent instrument (each, an "Intervening Assignment"), as may be necessary to show a complete chain of assignment from the originator, or, in the case of an Intervening Assignment that has been lost, a written Opinion of Counsel acceptable to the Trustee that such original Intervening Assignment is not required to enforce the Trustee's interest in the Mortgage Loans;

(vii) the original Primary Mortgage Insurance Policy or certificate, if private mortgage guaranty insurance is required;

(viii) with respect to each Mortgage Loan other than a Cooperative Loan, the original mortgagee title insurance policy or attorney's opinion of title and abstract of title;

50

<PAGE>

(ix) the original of any security agreement, chattel mortgage or equivalent executed in connection with the Mortgage or as to any security agreement, chattel mortgage or their equivalent that cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such document has been delivered for recordation, a photocopy of such document, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such security agreement, chattel mortgage or their equivalent delivered to the Trustee (or its custodian) is a true copy and that the original of such document has been forwarded to the public recording office; and

(x) with respect to any Cooperative Loan, the Cooperative Loan Documents.

The parties hereto acknowledge and agree that the form of endorsement attached hereto as Exhibit B-4 is intended to effect the transfer to the Trustee, for the benefit of the Certificateholders, of the Mortgage Notes and the Mortgages.

With respect to each Participation, the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or any custodian acting on the Trustee's behalf, a copy of the Participation Agreement and the original Participation issued to the Trustee.

(c) (i) Assignments of Mortgage with respect to each Non-MERS Mortgage Loan other than a Cooperative Loan shall be recorded; provided, however, that such Assignments need not be recorded if, in the Opinion of Counsel (which must be from Independent counsel) acceptable to the Trustee and the Rating Agencies, recording in such states is not required to protect the Trustee's interest in the related Non-MERS Mortgage Loans. Subject to the preceding sentence, as soon as practicable after the Closing Date (but in no event more than 3 months thereafter except to the extent delays are caused by the applicable recording office), the Trustee (or its Custodian), at the expense of the Depositor and with the cooperation of the applicable Servicer, shall cause to be properly recorded by such Servicer in each public recording office where the related Mortgages are recorded each

Page | 11

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

Assignment of Mortgage referred to in subsection (b)(v) above with
respect to a Non-MERS Mortgage Loan. With respect to each Cooperative
Loan, the Trustee (or its Custodian), at the expense of the Depositor
and with the cooperation of the applicable Servicer, shall cause such
Servicer to take such actions as are necessary under applicable law in
order to perfect the interest of the Trustee in the related Mortgaged
Property.

          (ii) With respect to each MERS Mortgage Loan, the Trustee (or
its applicable Custodian), at the expense of the Depositor and with the
cooperation of the applicable Servicer, shall cause to be taken such
actions by such Servicer as are necessary to cause the Trustee to be
clearly identified as the owner of each such Mortgage Loan on the
records of MERS for purposes of the system of recording transfers of
beneficial ownership of mortgages maintained by MERS.

          (d) In instances where a Title Insurance Policy is required to be
delivered to the Trustee, or to the applicable Custodian on behalf of the
Trustee, under clause (b)(viii) above and is not so delivered, the Depositor

51

<PAGE>

will provide a copy of such Title Insurance Policy to the Trustee, or to the
applicable Custodian on behalf of the Trustee, as promptly as practicable after
the execution and delivery hereof, but in any case within 180 days of the
Closing Date.

          (e) For Mortgage Loans (if any) that have been prepaid in full after
the Cut-off Date and prior to the Closing Date, the Depositor, in lieu of
delivering the above documents, herewith delivers to the Trustee, or to the
applicable Custodian on behalf of the Trustee, an Officer's Certificate which
shall include a statement to the effect that all amounts received in connection
with such prepayment that are required to be deposited in the applicable
Collection Account pursuant to Section 4.01 have been so deposited. All original
documents that are not delivered to the Trustee or the applicable Custodian on
behalf of the Trustee shall be held by the Master Servicer or the applicable
Servicer in trust for the benefit of the Trustee and the Certificateholders.

http://www.sec.gov/Archives/edgar/data/1274653/000095011604000160/ex4-1.txt

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

**New York State Trust Law Statutes state:**

Unless an asset is transferred into a lifetime trust, the asset does not become trust property. (NY Estates, Powers and Trust Law § 7-1.18).

A trustee's act that is contrary to the trust agreement is void. (NY Estates, Powers and Trust Law § 7-2.4)

*(This Space intentionally left blank)*

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

# SECTION 3:   FORECLOSURE

### Recorded Events on the Loan Including Foreclosure Issues and Securitization

| Recorded Chain of Mortgage Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original Mortgage** | **Date** | **Note Holder** |
| December 9, 2003<br><br>Instrument # 103551086<br><br>Official Records, Broward County Florida | EDWIN LOUBRIEL AND CARMEN LOUBRIEL<br>(Borrowers)<br><br>LEHMAN BROTHERS BANK, FSB<br>(Lender)<br><br>**MIN # 1000254-4000134239-0** | November 21, 2003 | LEHMAN BROTHERS BANK, FSB<br><br>( Lender)<br>Principal Amount: $196,000.00<br><br>**LOAN # 0016237521** |
| June 5, 2008<br><br>Instrument # 45423-720<br><br>Official Records, Broward County Florida | **Assignment of Mortgage to Aurora Loan Services, LLC.** Signed by Michelle Thompson as Vice President of MERS without disclosure of Assignee agent Aurora Loan Services employment. | December 1, 2003<br>Cut-Off Date<br><br>December 30, 2003<br>Closing Date | STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40<br>Lender<br>Principal Amount: $196,000.00 |
| December 24, 2013<br><br>Instrument # 112005557<br><br>Official Records, Broward County Florida | **Assignment of Mortgage to Nationstar Mortgage LLC.** Signed by Susan Lindhorst as Assistant Secretary of Aurora Loan Services, LLC by Nationstar Mortgage as "its attorney in fact" without power of attorney | | |

*Note: The above analysis covers primary active loan.  Annotated voluntary lien search located in Exhibit I.*

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

# REPORT SUMMARY

**Mortgage:**

- On November 21, 2003, Debtors EDWIN LOUBRIEL AND CARMEN LOUBRIEL executed a negotiable promissory note and a security interest in the form of a MORTGAGE in the amount of $ 196,000.00. This document was filed as document number 103551086 in the Official Records of Broward County. *The original lender of the promissory note and beneficiary of the Mortgage is LEHMAN BROTHERS BANK, FSB Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is not named as the payee of the note, but is named as acting solely as a "nominee" for the lender as the beneficiary of the security interest Security Deed.*

**Securitization (The Note):**

- The NOTE was sold, transferred, assigned and securitized into the **STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40** with a Closing Date of December 30, 2003.

**Assignment of Mortgage #1:**

- On June 5, 2008, an Assignment of Mortgage was recorded in the Official Records, Broward County as instrument number 45423-720 to Aurora Loan Services. Document was signed by Michelle Thompson for Mortgage Electronic Registration Systems, Inc.

**Assignment of Mortgage #2:**

- On December 24, 2013, an Assignment of Mortgage was recorded in the Official Records, Broward County as instrument number 112005557. Similar concerns are present as with above Assignment of Mortgage.

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

# ROBO SIGNER ANALYSIS AND FINDINGS

**Assignment of Mortgage #1:**

- On June 5, 2008, an Assignment of Mortgage was recorded in the Official Records, Broward County as instrument number 45423-720 to Aurora Loan Services. Document was signed by Michelle Thompson for Mortgage Electronic Registration Systems, Inc. without disclosure of Aurora Loan Services likely employment in working for Assignee, not Assignor. Approximately 4.7 years had gone by since note placed into STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 and examiner therefore recommends immediate production of the then notarized bill of sale; note endorsement; and verifiable proof of funds prior to the cut-off date of December 1, 2003, starting with original lender LEHMAN BROTHERS BANK, FSB, to LEHMAN BROTHERS HOLDINGS INC. to STRUCTURED ASSET SECURITIES CORPORATION and into the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 for approval of this Assignment of Mortgage. Examiner considers this a document of impropriety requiring rescission for rightful foreclosure to take place until actual purchase by above parties is verified.

**CORPORATE ASSIGNMENT OF MORTGAGE**

Broward, Florida
SELLER'S SERVICING #:0016237621 "LOUBRIEL"

MERS #: 100025440001342380 VRU #: 1-888-679-6377

Date of Assignment: March 12th, 2008
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. A DELAWARE CORPORATION at P.O. BOX 2026, GH316 MILLER ROAD, FLINT, MI 48501-2026
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE 69361
Executed By: EDWIN LOUBRIEL AND CARMEN LOUBRIEL, HIS WIFE To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage: 11/21/2003 Recorded: 12/09/2003 in Book/Reel/Liber: 36563 Page/Folio: 1506 as Instrument No.: 103551085. In Broward, Florida.

Property Address: 1272 NW. 89TH TERRACE, PEMBROKE PINES, FL 33024

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $196,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. A DELAWARE CORPORATION
On March 12th, 2008

By: _Michele Thompson_
MICHELE THOMPSON, Vice President

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

Document was signed by Michelle Thompson for Mortgage Electronic Registration Systems, Inc. without disclosure of Aurora Loan Services likely employment in working for Assignee, not Assignor:

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

MICHELE THOMPSON
Aurora Loan Services Inc.
P.O. Box 1706
Scottsbluff, NE 69363-1706

**DEED OF RELEASE**
AURORA LOAN SERVICES INC. #:0032320616 "PITTARD" Lender ID:N14/097/03
MERS #: 10003922135004 0312 VRU #: 1-888-679-6377

KNOW ALL MEN BY THESE PRESENTS that MORTGAGE ELECTRONI
NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZ
AND ASSIGNS holder of a certain Deed of Trust. whose parties. dates an

http://deeds.desotocountyms.gov/T/T02981-00735.pdf

| | |
|---|---|
| 10217787 Timblin,Anna V. | 455 Aurora Loan Services Inc. |
| 10217789 Bravo,Rosa | 455 Aurora Loan Services Inc. |
| 10217790 Ouderkirk,Janelle Jame | 455 Aurora Loan Services Inc. |
| 10217799 M'Bowe,Toni Denise | 455 Aurora Loan Services Inc. |
| 10217800 Johnston,Michelle Rene | 455 Aurora Loan Services Inc. |
| 10217801 Thompson,Michele Marie | 455 Aurora Loan Services Inc. |
| 10217802 Houck,Amanda Beth | 455 Aurora Loan Services Inc. |
| 10217805 Trompke,Leann E | 455 Aurora Loan Services Inc. |
| 10217806 McGinley,Jennifer M. | 455 Aurora Loan Services Inc. |
| 10217808 Rodriguez,Maria Del Rocio | 455 Aurora Loan Services Inc. |
| 10217812 Isabell,Ann L. | 455 Aurora Loan Services Inc. |

Confidential Treatment Requested By Lehman Brothers Holdings, Inc.          **LBEX-AM 5642402**

http://jenner.com/lehman/docs/debtors/LBEX-AM%205642400-5642997.pdf

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

## Assignment of Mortgage #2:

- On December 24, 2013, an Assignment of Mortgage was recorded in the Official Records, Broward County as instrument number 112005557. Similar concerns are present as with above Assignment of Mortgage. Document signed by Susan Lindhorst for Aurora Loan Services LLC by Nationstar Mortgage LLC as its "Attorney in Fact" without a power of attorney. Examiner recommends immediate rescission for rightful foreclosure to proceed, pending production and review of purchase and endorsement documents showing complete chain of title.

**CORPORATE ASSIGNMENT OF MORTGAGE**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

**Broward, Florida**
**SELLER'S SERVICING #:0599016580 "LOUBRIEL"**

Date of Assignment: November 27th, 2013
Assignor: AURORA LOAN SERVICES LLC BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT at 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067
Assignee: NATIONSTAR MORTGAGE LLC at 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067
Executed By: EDWIN LOUBRIEL AND CARMEN LOUBRIEL, HIS WIFE To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage: 11/21/2003 Recorded: 12/09/2003 in Book/Reel/Liber: 36553 Page/Folio: 1508 as Instrument No.: 103551086 In the County of Broward, State of Florida.

Property Address: 1272 NW. 89TH TERRACE, PEMBROKE PINES, FL 33024

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $196,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

AURORA LOAN SERVICES LLC BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT
On ___11-27-2013___

By: _Susan Lindhorst_
   **Susan Lindhorst**
**Assistant Secretary**

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

Susan Lindhorst is mentioned in different list of known Robosigners for Aurora Loan Services:

**Robosigning-Now-The-Latest-Newcomers**

Backus, Deborah

Rein, Joann

**ROBO SIGNERS OF Aurora Loan Services, Littleton, Colorado:**
signed mortgage assignments to trusts as officers of MERS and many
lenders:

Backus, Deborah

Lang, Lucy

Lindhorst, Susan

Rein, Joann

Schultz, Theodore B.

**Notaries – notarized mortgage assignments to trusts:**

Dietz, Darline

**http://www.hofj.org/virtualoffice_files/Robo-Signing-Overview.pdf**

LEONARD SHEILA
LEVINGS CHESTER
**LINDHORST** SUSAN
LITTLE KRISTI A.
LOVE TOPAKO
LYNCH MARY
MADEJA NANCY

http://www.protitleusa.com/list_robo.aspx

Page | 19

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

American Banker states that foreclosure ownership support documents (e.g. Assignments of Mortgage) should be prepared at time of transfer instead of by bank employees claiming to represent lenders that no longer exist:



by Kate Berry
AUG 31, 2011 5:47pm ET

🖶 Print   ✉ Email   ♻ Reprints

(15) Comments

🐦 Tweet  66    in Share   21    f Like   76   ⎙ +1

Some of the largest mortgage servicers are still fabricating documents that should have been signed years ago and submitting them as evidence to foreclose on homeowners.

The practice continues nearly a year after the companies were caught cutting corners in the robo-signing scandal and about six months after the industry began negotiating a settlement with state attorneys general investigating loan-servicing abuses.

Several dozen documents reviewed by *American Banker* show that as recently as August some of the largest U.S. banks, including Bank of America Corp., Wells Fargo & Co., Ally Financial Inc., and OneWest Financial Inc., were essentially backdating paperwork necessary to support their right to foreclose.

Some of documents reviewed by *American Banker* included signatures by current bank employees claiming to represent lenders that no longer exist.

**RELATED LINKS**

U.S. Bank Stands Out as a Mortgage Bond Trustee with Teeth

Robo-Signing Settlement Needs to Go All the Way

Are the State AG Mortgage Settlement Talks Falling Apart?

N.Y. AG Moves to Intervene in B of A-Bondholder Settlement

**RELATED GRAPHIC**

🔍 Enlarge This Image



http://www.americanbanker.com/issues/176_170/robo-signing-foreclosure-mortgage-assignments-1041741-1.html

Page | 20

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

# BLOOMBERG RESEARCH

## LOAN SEARCH

The loan was found in the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 as investor loan number 0016237521, which agrees with the characteristics of the loan. The loan is shown with a current rate of 2.625% and a principal and interest payment of $825.14 per month.



*(This Space intentionally left blank)*

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

## DESCRIPTION OF SECURITY FROM BLOOMBERG



## DEAL DESCRIPTION

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

## STRUCTURAL SUMMARY
**Key credit trigger tests have failed in this investment class within trust**



## STRUCTURED FINANCE NOTES SCREEN
**Lists the primary transaction parties. Lehman Brothers Special Financing Inc., may have at least partially offset the risks and losses of ownership through the use of credit default swaps.**

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

## LOAN LEVEL DETAIL

Loan uses the Libor 6 month index, a margin and lifetime floor of 2.250% and a lifetime cap of 10.875%, which agrees with the Adjustable Rate Rider.



Property located in the PEMBROKE PINES zip code 33024.



COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

## VIEW ALL LOAN CLASSES SCREEN

The loan was found in 12 classes as the loan is located in the all collateral group and in group 2. Six classes are UNPAID and the remaining six classes are completely paid. CUSIP numbers of each investment class are shown below.



## Trust has an issuance date of 12/30/2003



COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

## LOAN COLLATERAL PERFORMANCE

Few loan modifications in spite of an 11-15% 90 day+ default rate in this trust targeting Florida homeowners



*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

## PROSPECTUS PULLED FROM BLOOMBERG, LP

## THE BANK OF NEW YORK CORPORATE TRUSTEE CONTACT INFORMATION AND EXTRACT OF RECENT INVESTOR STATEMENT

Page 1 of 9

Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-40A

December 26, 2013

### Table of Contents

| | |
|---|---|
| Distribution Report | 2 |
| Factor Report | 3 |
| Collection Account Principal Funds | 4 |
| Collection Account Interest Funds | 4 |
| Total Remittance | 4 |
| Loan Information | 4 |
| Penalties and Shortfalls | 4 |
| Delinquency by Group | 5 |
| Delinquency Totals | 6 |
| Foreclosure Group Report | 7 |
| Foreclosure Scheduled Loan Report | 7 |
| REO Group Report | 8 |
| REO Property Scheduled Balance | 8 |
| Other Losses | 8 |
| Interest Shortfalls | 9 |

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THIS STATEMENT, PLEASE CONTACT THE ADMINISTRATOR LISTED BELOW:
Leela Ragbarsingh
The Bank of New York Mellon Corporation - Structured Finance
101 Barclay Street, Floor 7E
New York, New York 10286
Tel: (212) 815-6184 / Fax: (212) 815-3910
Email: leela.ragbarsingh@bnymellon.com

BNY MELLON
CORPORATE TRUST

## CONCLUSION

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

# CHAIN OF TITLE



| EDWIN AND CARMEN LOUBRIEL | DEED OF TRUST → | TITLE COMPANY/ ESCROW | | BROWARD COUNTY, FLORIDA |
| --- | --- | --- | --- | --- |

**EDWIN AND CARMEN LOUBRIEL**

BORROWER
TRUSTOR
MORTGAGOR/MORTGAGER
GRANTOR

**DEED OF TRUST**

**TITLE COMPANY/ ESCROW**

**BROWARD COUNTY, FLORIDA**

MAINTAINS ASSIGNMENT HISTORY

**PROMISSORY NOTE**

**DEED ISSUED TO MERS
SPLIT FROM NOTE**

**MERS**

CUSTODIAN

Maintains Assignment History
No physical possession
No pecuniary interest
"The mortgage or Assignment of the mortgage of some of the mortgage loan have been or may be recorded in the name of MERS, solely as Nominee for the originator and its successors and assigns"
"MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the Trustee and does not have interest in the mortgage loan

**MONTHLY PAYMENTS**

**NOTE WAS SPLIT FROM THE DEED**

**LEHMAN BROTHERS BANK, FSB**

LENDER/ ORIGINATOR

**AURORA LOAN SERVICES, INC.**

MASTER SERVICER

Services individual loans; Aggregates Collection; Performs Duties under Trust's Pooling & Servicing Agreement

**NOTE WAS SOLD & TRANSFERRED**

**LEHMAN BROTHERS HOLDINGS, INC.**

SELLER
Purchases loans from originator; forms pool

**LEHMAN BROTHERS**
UNDERWRITERS

SELLS CERTIFICATES TO INVESTORS; COLLECTS OFFERING PROCEEDS

**CERTIFICATES**

**STRUCTURED ASSET SECURITIES CORPORATION**

DEPOSITOR
Creates Issuing Entity

**CERTIFICATES**

**CERTIFICATES**

**OFFERING PROCEEDS**

**JPMORGAN CHASE BANK**
TRUSTEE FOR THE TRUST

Represents Investors' Interests; Calculates Cash Flows; Remits Net Revenues

UNDERLYING CUSTODIAN
Document Custody

**INVESTORS**

Purchase Mortgage Backed Securities as defined in Certificates

**STRUCTURED ASSET SECURITIES CORPORATION SERIES 2003-40A**

TRUST FUND – ISSUING ENTITY
Holds pool of loans; issues certificates

**RETURN ON INVESTMENTS**

**ARROW LEGEND**

**PURPLE – MORTGAGE DOCUMENTS**
BLUE   – SECURITIES CERTIFICATES
**RED** – **INVESTOR FUNDS**
GREEN – BORROWER FUNDS

Page | 28

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-*

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

- The Mortgage has MIN number 1000254-4000134239-0 and is registered at the MERS SERVICER ID website https://www.mers-servicerid.org/sis/search showing Aurora Commercial Corp. as Servicer and JP Morgan Chase Bank as Trustee as stated investor.

- Although MERS records an assignment in the real property records, the promissory note which creates the legal obligation to repay the debt has not been transferred nor negotiated by MERS.

- MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or MORTGAGE sale.

- MERS is never the owner of the promissory note for which it seeks foreclosure.

- MERS has no legal or beneficial interest in the loan instrument underlying the security instrument for which it serves as "nominee".

- MERS has no legal or beneficial interest in the mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no interest at all in the promissory note evidencing the mortgage indebtedness.

- MERS is not a party to the alleged mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no financial or other interest in whether or not a mortgage loan is repaid.

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

The loan is *registered* within the MERS database showing Aurora Commercial Corp. as Servicer and JP Morgan Chase Bank as Trustee as stated investor.



**MERS**
*ServicerID*
www.mers-servicerid.org

*Process Loans, Not Paperwork™*

**1 record matched your search:**

*Need help?*

MIN: **1000254-4000134239-0**          Note Date: **11/21/2003**          MIN Status: **Inactive**

Servicer: Aurora Commercial Corp.          Phone: **(720) 945-3964**
              **Littleton, CO**

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

Return to Search

*Select borrower type and enter borrower information to see Investor for MIN 1000254-4000134239-0.*

* **Investor for Individual Borrower**

*Your entries may be either upper or lower case.*
*Fields marked ★ are required.*

Last Name: |LOUBRIEL|          ★

SSN: |     | - |     | - |     | ★

☐ *By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.* ★

[ Submit ]

**Investor for Corporation/Non-Person Entity Borrower**

Servicer: Aurora Commercial Corp.          Phone: **(720) 945-3964**
              **Littleton, CO**

Investor: **JP Morgan Chase Bank as Trustee**

Page | 30

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

# Securitizing a Loan

ξ For traditional lending prior to Securitization, the original Deed recording was usually the only recorded document in the Chain of Title. That is because banks kept the loans, and did not sell the loan, hence, only the original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac, involved an entirely new process in mortgage lending. With Securitization, the Notes and Deeds were sold once, twice, three times or more. Using the traditional model would involve recording new Assignments of the Deed and Note as each transfer of the Note or Deed of Trust occurred. Obviously, this required time and money for each recording.

(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees. Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights.)

ξ Securitizing a Loan

Securitizing a loan is the process of selling a loan to Wall Street and private investors. it is a method with many issues to be considered. The methodology of securitizing a loan generally followed these steps:

- A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the Wall Street firm "pre-sold" the bonds.

- The Wall Street firm would approach a lender and usually offer them a warehouse Line of Credit. The Warehouse Credit Line would be used to fund the loan. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.

- The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Lender would execute the loan and fund it, collecting payments until there were enough loans funded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary loans were funded, the lender would then sell the loans to the "Sponsor", usually either a subsidiary of the Wall Street firm, of a specially created Corporation of the lender. At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.

- Next, the loans were "sold" to the "Depositor." This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or the loans are "protected" from the lender. The "Depositor" would be, once again, created by the Wall Street firm or the lender.

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

Page | 31

- Then the "Depositor" would place the loans into the Issuing Entity, which is another entity created solely for the purpose of selling the bonds.

- Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.

ξ LEHMAN BROTHERS BANK, FSB was a "correspondent lender" that originated mortgage loans. These loans, in turn, were sold and transferred into a "federally-approved securitization" trust named the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40.

ξ The Note and Deed have taken two distinctly different paths. The Note was securitized into the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40.

ξ The written agreement that created the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 is a "Pooling and Servicing Agreement" (PSA), and is a matter of public record, available on the website of the Securities Exchange Commission. The Trust is also described in a "Prospectus Supplement," also available on the SEC website. The Trust by its terms set a "CLOSING DATE" of ON OR ABOUT DECEMBER 30, 2013. The promissory note in this case became trust property in compliance with the requirement set forth in the PSA. The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the PSA are governed under the law.

ξ In view of the foregoing, the Assignment of Mortgage executed after the Trust's Closing Date would be a void act for the reason that it violated the express terms of the Trust instrument.

ξ The loan was originally made to LEHMAN BROTHERS BANK, FSB and was sold and transferred to STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40. There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

> In Carpenter v. Longan 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."

>> An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. It is impossible to define security apart from its relationship to the promise or obligation it secures. The obligation and the security are commonly drafted as separate documents – typically a promissory note and a Mortgage. If the creditor transfers the note but not the Mortgage, the transferee receives a secured note; the security follows the note, legally if not physically. If the transferee is given the Mortgage without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685).

>> "Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000).

Page | 32

By statute, assignment of the mortgage carries with it the assignment of the debt. . . Indeed, in the event that a mortgage loan somehow separates interests of the note and the Mortgage, with the Mortgage lying with some independent entity, the mortgage may become unenforceable. The practical effect of splitting the Mortgage from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the Mortgage is the agent of the holder of the note. Without the agency relationship, the person holding only the trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the Mortgage."

## DISCLAIMER

This report was based exclusively on the documentation provided. It also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings. The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-

# EXHIBIT I

## Voluntary Lien Search

### Voluntary Lien Report

**Transaction Details for**
**1272 NW 89TH TER, PEMBROKE PINES FL 33024**
**APN: 51-41-08-05-1810**

**History Record #: 1**
*Assignment:*
Recording Date: **12/24/2013**　　　　　　　　　Orig Recording Date: **12/09/2003**
Document Number: **112005557**　　　　　　　　　Orig Doc Number: **103551086**
　Document Type: **ASSIGNMENT**
　New Lender: **NATIONSTAR MTG LLC**
　Previous Lender: **AURORA LOAN SVCS LLC**
　　Borrower: **LOUBRIEL EDWIN & CARMEN**

**History Record #: 2**
*Sale/Transfer:*
Recording Date: **10/02/2013**　　　　　　　　　Sale Date: **03/08/2012**
Document Number: **111844707**　　　　　　　　　Sale Price: **$158,900**
　Document Type: **CERTIFICATE OF TITLE (FL)**　　　Sale Type:
　Title Company:
　　Buyer: **AURORA LN SVCS LLC**
　　Seller: **LOUBRIEL CARMEN & EDWIN COC**

**History Record #: 3**
*Release:*
Recording Date: **08/05/2010**　　　　　　　　　Orig Recording Date: **12/09/2003**
Document Number: **47283.428**　　　　　　　　　Orig Doc Number: **36553-1508**
　Document Type: **RELEASE**

**History Record #: 4**
*Assignment:*
Recording Date: **06/05/2008**　　　　　　　　　Orig Recording Date: **12/09/2003**
Document Number: **45423.720**　　　　　　　　　Orig Doc Number: **36553-1508**
　Document Type: **ASSIGNMENT**
　New Lender:
　Previous Lender:
　　Borrower:

**History Record #: 5**
*Release:*
Recording Date: **02/24/2006**　　　　　　　　　Orig Recording Date: **12/15/2003**
Document Number: **41521.1795**　　　　　　　　　Orig Doc Number: **36585-1908**
　Document Type: **RELEASE**

**History Record #: 6**
*Finance:*
Recording Date: **02/10/2006**　　　　　　　　　Finance Type: **REFINANCE**
Document Number: **41440-1149**　　　　　　　　　Mortgage Loan Type:
　Document Type: **TRUST DEED / MORTGAGE**　　　Mortgage Term:
　　Lender: **WELLS FARGO BANK**　　　Mortgage Rate Type: **VARIABLE**
　Loan Amount: **$75,000**　　　　　　　　　Mortgage Rate:
　　Borrower: **LOUBRIEL CARMEN**
　　Borrower: **LOUBRIEL EDWIN**

**History Record #: 7**
*Finance:*
Recording Date: **12/15/2003**　　　　　　　　　Finance Type: **REFINANCE**
Document Number: **36585-1908**　　　　　　　　　Mortgage Loan Type:
　Document Type: **TRUST DEED / MORTGAGE**　　　Mortgage Term:
　　Lender: **LEHMAN BROTHERS BANK FSB**　　　Mortgage Rate Type: **FIXED**
　Loan Amount: **$49,000**　　　　　　　　　Mortgage Rate:
　　Borrower: **LOUBRIEL CARMEN**
　　Borrower: **LOUBRIEL EDWIN**

**History Record #: 8**
*Sale/Transfer:*
Recording Date: **12/09/2003**　　　　　　　　　Sale Date:

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

| | | |
|---|---|---|
| Document Number: **36553-1507** | Sale Price: **$245,000** | |
| Document Type: **DEED** | Sale Type: | |
| Title Company: | | |
| Buyer: **LOUBRIEL,EDWIN & CARMEN** | | |
| Seller: **DUKE DWAYNE A & KARIN** | | |

**Finance:**

| | |
|---|---|
| Recording Date: **12/09/2003** | Finance Type: **RESALE** |
| Document Number: **36553-1508** | Mortgage Loan Type: |
| Document Type: **FINANCE** | Mortgage Term: |
| Lender: **LEHMAN BROTHERS BANK FSB** | Mortgage Rate Type: **VARIABLE** |
| Loan Amount: **$196,000** | Mortgage Rate: |
| Borrower: **LOUBRIEL CARMEN** | |
| Borrower: **LOUBRIEL EDWIN** | |

**Voluntary Lien Date Ranges for BROWARD, FL**

| | **Sales** | **Mortgages** | **Assignments** | **Releases** | **Foreclosures** |
|---|---|---|---|---|---|
| **Start Date** | 01/02/1997 | 01/02/1997 | 01/01/2005 | 01/01/2005 | 01/01/2005 |
| **End Date** | 01/16/2014 | 01/16/2014 | 01/16/2014 | 01/16/2014 | 01/16/2014 |

www.docedge.com

1. Item 8. EDWIN LOUBRIEL AND CARMEN LOUBRIEL acquired property for $245,000 on 12/09/03, financing purchase with primary active loan for an 80% loan to value ratio.

2. Item 2. Appears to be a mis-recorded foreclosure deed transfer given subsequent Assignment of Mortgage.

3. Items 1 and 4. Foreclosure actions brought by foreclosing parties with impropriety as noted in body of report.

### Assignment of Mortgage #1:   Item 4

o On June 5, 2008, an Assignment of Mortgage was recorded in the Official Records, Broward County as instrument number 45423-720 to Aurora Loan Services. Document was signed by Michelle Thompson for Mortgage Electronic Registration Systems, Inc. without disclosure of Aurora Loan Services likely employment in working for Assignee, not Assignor. Approximately 4.7 years had gone by since note placed into STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 and examiner therefore recommends immediate production of the then notarized bill of sale; note endorsement; and verifiable proof of funds prior to the cut-off date of December 1, 2003, starting with original lender LEHMAN BROTHERS BANK, FSB, to LEHMAN BROTHERS HOLDINGS INC. to STRUCTURED ASSET SECURITIES CORPORATION and into the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 for approval of this Assignment of Mortgage. Examiner considers this a document of impropriety requiring rescission for rightful foreclosure to take place until actual purchase by above parties is verified.

Page | 35

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*

### Assignment of Mortgage #2: Item 1

○ On December 24, 2013, an Assignment of Mortgage was recorded in the Official Records, Broward County as instrument number 112005557. Similar concerns are present as with above Assignment of Mortgage. Document signed by Susan Lindhorst for Aurora Loan Services LLC as its "Attorney in Fact" without a power of attorney. Examiner recommends immediate rescission for rightful foreclosure to proceed, pending production and review of purchase and endorsement documents showing complete chain of title.

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## AFFIDAVIT OF FACTS

STATE OF CALIFORNIA     )
                             ) sv.: **AFFIDAVIT**

COUNTY OF ORANGE      )

## RE: EDWIN LOUBRIEL AND CARMEN LOUBRIEL

I, MICHAEL CARRIGAN, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1. That I am a subscriber of the Bloomberg Professional Service, certified and licensed to use such service. I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the Bloomberg terminal.

2. I am a Certified Mortgage Securitization Auditor and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have produced approximately one thousand five hundred Securitized Analysis Reports in residential real estate mortgage investigation in 40 states and in Puerto Rico, have testified as an expert witness, and have trained auditors in California, Florida, Nevada, New York and Virginia and via the Internet in webinar format.

3. I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of mortgage and loan related documents and information.

4. The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1] The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



Certified Forensic Loan Auditors

5.  On January 27, 2014, I researched the Bloomberg online Database at the request of EDWIN LOUBRIEL AND CARMEN LOUBRIEL whose property address is 1272 NW 89 TH TER, PEMBROKE PINES, FL 33024.

6.  Based on the information I was provided, EDWIN LOUBRIEL AND CARMEN LOUBRIEL signed a Promissory Note in favor of LEHMAN BROTHERS BANK, FSB on November 21, 2003.

7.  Loan was identified in the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 with the Master Servicer being LEHMAN BROTHERS HOLDINGS INC.; the Sponsor / Seller being LEHMAN BROTHERS HOLDINGS INC. and the Depositor being STRUCTURED ASSET SECURITIES CORPORATION.

8.  The basis of the identification of Loan in STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 was made from the following factors/information that exactly correspond with EDWIN LOUBRIEL AND CARMEN LOUBRIEL'S loan documents provided: Loan Number: 0016237521; Original Amount: $196,000.00; Origination Date: November 21, 2003; Location of Property: FL; Property Type: Single Family Residence; Occupancy: Owner Occupied; Zip Code: 33024; Type Loan: 30 Year Adjustable Rate Mortgage using the 6 month LIBOR Index, 2.250% lifetime floor and margin, and 10.875% lifetime ceiling.

9.  EDWIN LOUBRIEL AND CARMEN LOUBRIEL'S Note was split-apart or fractionalized, as separate accounting entries and deposited separately into Classes. Each Class is insured up to 30 times the face value of each Note therein, which is permissible under the Federal Reserve System.

10. Pursuant to my extensive research, I have found the Loan in twelve (12) Classes of the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40. These classes represent the sections that the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 is divided into. Individuals invest in these Classes based on their desired maturities, yield, credit rating and other factors. The STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 pays interest, usually monthly, to investors and principal payments are paid out in the order of the maturity and as specified in trust agreements.

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

11.  Below are the classes the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40 has been divided into and their CUSIP number which is a nine (9) character alphanumeric code identifying any North American security for the purpose of facilitating clearing and settlement of trades.



12.  There are a total of twenty-one (21) classes in the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-40.

13.  The loan is in twelve (12) classes. Six (6) classes out of the twelve (12) have been paid (Pd.). The loan is in the all collateral group.

14.  Generally, if the Mortgage and the Note are not together with the same entity, there can be no legal enforcement of the Note. The Mortgage enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the Mortgage and the Note are separated, foreclosure legally cannot occur. The Note cannot be enforced by the Mortgage if each contains a different mortgagee/beneficiary; and, if the Mortgage is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

15.  No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio. Therefore, either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

16.  In the event that the loan was sold, pooled and turned into a security, the alleged holder can no

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

longer claim that it is a real party of interest, as the original lender has been paid in full.

17.   Further said, once the Note was converted into a stock, or stock equivalent, it is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. Double dipping is a form of securities fraud.

18.   Once a loan has been securitized, which the aforementioned loan may have been done many times, it forever loses its security component (i.e., the Mortgage), and the right to foreclose through the Mortgage is forever lost.

19.   The Promissory Note has been converted into a stock as a permanent fixture. It is now a stock and governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements, pooling and servicing agreements, form 424B-5, et.al. There is no evidence on Record to indicate that the Mortgage was ever transferred concurrently with the purported legal transfer of the Note, such that the Mortgage and Note has been irrevocably separated, thus making a nullity out of the purported security in a property, as claimed (Federal Rules of Evidence Rules 901 & 902).

20.   Careful review and examination reveals that this was a securitized loan. The Assignments of Mortgage pretended to be an A to D transaction when in fact the foreclosing party was hiding the A to B, B to C, and C to D facts of true sales, where A is the original lender, B the sponsor/seller, C the bankruptcy-remote depositor, and D, the issuing mortgage-backed securities trust. They also hid the legal SEC filings, governing the transaction according to our findings. But to be controlled by those SEC filings, the true original loan Note and Mortgage had to be provided by the Document Custodian certified to have been in possession of them by them on or about December 30, 2013. Because it was not, the claim of ownership by the Trust cannot be substantiated and the loan servicing rights not established at law by agreement. I supply this report as written testimony and am available for oral testimony.

By:

Michael Carrigan
Certified Mortgage Securitization Auditor / Bloomberg Specialist

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

**STATE OF CALIFORNIA** )
                              ) sv: **ACKNOWLEDGEMENT**
**COUNTY OF ORANGE** )

On _Jan 28ᵗ_ , 2014 before me, _Munawar   Arif   Lakham_ .
                                               (Notary Public)

personally appeared **MICHAEL CARRIGAN**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

My commission Expires _Jan   19ᵏ   2017_

MUNAWAR ARIF LAKHANI
COMM. #2004648
Notary Public · California
Orange County
My Comm. Expires Jan. 19, 2017

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011